WEST v McLOUGHLIN

1. WILLS—CONSTRUCTION—DEVISES—MISDESCRIPTION—TRANSPOSITION OF TERMS.

A finding that a testator transposed "West" and "East" in describing land devised to his daughter in a holographic will is not erroneous where, absent the finding of such a transposition, the results would have been an overlap of approximately 17 acres of testator's real property that otherwise could not be accounted for, a devise of some 8 acres which the testator did not own, and nearly a 25-acre disparity in lands received by the testator's 5 children when there was no indication that the testator intended to treat his children other than equally.

2. WILLS—DEVISES—CONSTRUCTION—LIFE ESTATES—CONTINGENT ESTATES.

Devises to a testator's five children to have and to hold during their natural lives and then to their "heirs" but if any child die without "heirs", then that child's portion to be equally divided among the testator's surviving children, created life estates in the five children with alternative estates or contingencies with a double aspect in the children's "heirs", if any, and in the deceased life tenant's surviving brothers and sisters.

3. WILLS—DEVISES—CONSTRUCTION—LIFE ESTATES—CONTINGENT ESTATES—REVERSION.

A life estate devised to plaintiff's decedent by her father with contingent remainders in the decedent's surviving children, if any, and if not, in decedent's surviving brothers and sisters, reverted to the father's estate and, absent a residuary clause in the father's will, to his next of kin or heirs at law, where plaintiff's decedent died without any surviving children but survived her brothers and sisters, because if they failed to survive decedent, no estate in possession vested in them, and no heirs, legatees, assigns or others in derivative status could take through them.

REFERENCES FOR POINTS IN HEADNOTES
[1] 57 Am Jur, Wills §§ 1204, 1205.
[2, 3] 57 Am Jur, Wills § 1291 *et seq.*

Appeal from St. Joseph, Robert E. A. Boyle, J. Submitted Division 3 May 11, 1972, at Grand Rapids. (Docket No. 12504.) Decided July 26, 1972.

Complaint by Douglas H. West, administrator *de bonis non* with will annexed of the estate of Myra C. Sturgis, deceased, against Frances, Kathleen, William, Amos, and Robert McLoughlin, Clara L. Kittman, Myra S. Hurd, Gladys H. Harland, Amos F. Sturgis, Charles R. Sturgis, Margaret E. Sturgis Carter, Lillian I. Sturgis Burgess, F. James McDowell, James B. McDowell and Douglas F. McDowell to reform and interpret the will of decedent's father, Amos Sturgis, and to determine title to lands devised under the father's will. Judgment for plaintiff. Defendants Hurd, Harland, Sturgis, Carter, Burgess and McDowell appeal. Affirmed in part and reversed in part.

*Hill, Lewis, Adams, Goodrich & Tait* (by *Richard E. Smoke)*, and *Miller & Enix*, for plaintiff.

*Law, Buchen, Weathers, Richardson & Dutcher,* for defendants-appellants.

Before: R. B. BURNS, P. J., and HOLBROOK and O'HARA,* JJ.

O'HARA, J. The origin of this case is deeply entwined in the historical roots of southwestern Michigan. Judging from the erudition of the briefs and the intensity of oral argument, the genesis of the legal issues is considerably more ancient. They extend, counsel tell us, to the year 1838 when the Rule in Shelley's Case was statutorily abolished in this state.

---

* Former Supreme Court Justice, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

To understand what was before we were sent scurrying to dig out ancient textbooks, legal dictionaries and myriad other sources to refresh our memories of such infrequently used terms as "fee tail", "fee simple", "fee simple absolute", "estates for life", "alternative contingent remai�großers", "conditions precedent and subsequent" and even a tangential reference to the difference between descent of real property *per stirpes* and *"per capita"*.

It is the contention of appellants that despite the aforementioned abolition the circuit judge applied the rule in Shelley's case in classical purity and, from this initial error, used subsequently enacted statutes to reach a legally impermissible result.

No so, says plaintiff-appellee. The trial court construed the will in question from "its four corners"; determined as a matter of fact the intent of the testator, applied well-recognized statutory and case-made real property law to those facts and came up with the only permissible legal conclusion.

Fortunately for us, the record contains a stipulation of facts. That, together with exhibits, the will in question and the pleadings, constitute the total record upon which we must make our decision.

Amos Sturgis was a resident of St. Joseph County. He died testate in 1899. His will, the record suggests, was self-drawn. Apparently the men of the Sturgis clan preferred this practice to turning the task over to an attorney. This is relevant to the finding of fact of the trial judge that whoever drew the will used the word "heirs" in a non-legal sense, when what he really meant to say was "issue", "children", or "heirs of the body". The trial judge further found that the testator

transposed "West" and "East" in the description of devised lands to his daughter, Myra, one of his five children.

It would profit the trial bench, the profession and, through them, the public they serve very little to detail again the reasons why the trial judge held as he did on these two issues. Sufficeth to say that with care and precision he set forth his reasons. We capsulize those reasons.

Had there *not* been a transposition of the terms above mentioned the result of his will would have been to have an overlap of approximately 17 acres of his extensive real property holdings that could not otherwise be accounted for. Additionally, absent the finding of the transposition, the will would have resulted in a devise of some eight acres he did not own. We too think Amos was well aware of what he possessed.

Further, under the literal wording of the will there would have been disparity between the land received by certain of the involved children of nearly 25 acres. Under the interpretation of the trial judge the late Mr. Sturgis would have devised the acreage with almost computerized equality. There is no indication in the rest of the instrument that he intended to treat the children other than equally. As to this issue of the misdescription, we affirm the trial judge.

Now as to the disputed use of the term "heirs" and the consequential type of estate created, the learned trial judge construed the sixth clause of the will reading:

"All the real estate herein bequeathed to my five aforesaid mentioned children they are to have and to hold during their natural lives and then it shall descend to their heirs, Should any of my said children die without leaving heirs then his or her portion herein

bequeathed by me shall be equally divided among the surviving children herein mentioned",

as creating an entailed estate which was converted by statute into an estate in fee.[1] See MCLA 554.3; MSA 26.3; MCLA 554.4; MSA 26.4.

*Per contra,* we approvingly quote from the order of the St. Joseph County Probate Court determining heirs of the estate of Amos Dorwin Sturgis, whose status under Amos, Sr.'s will was identical to that of Myra's.

" * * * [I]t was the intention of the testator in his will that his son Amos Dorwin Sturgis have the life use of the property * * * and * * * on his death the property was to go and become vested in the child or children (described "heirs" in the will) of Amos Dorwin Sturgis who survived him. That in default of not having any such child or children surviving him it was to go to his brothers and sisters who survived him;"

* * *

" * * * Amos Dorwin Sturgis became vested with the life estate of the property * * * by virtue of the provisions and terms of the will of the testator and * * * upon the death of the said Amos Dorwin Sturgis the fee and title of the above described property became and was vested in Myra C. Sturgis, the only child of the testator who survived Amos Dorwin Sturgis and * * * the said Myra C. Sturgis is entitled by the laws of this state to inherit and claim title in fee for all of the real estate in this order described * * * ."[2]

Other indicia as to the testator's intent to create a particular type of estate may be discerned from the stipulation of facts comprising part of the record in the case at bar. There it states that:

---

[1] We note that the learned trial judge incorrectly denominated the estate as a fee simple conditional.

[2] No issue is raised on appeal as to the property Myra acquired by virtue of surviving her brother Amos.

" * * * Myra C. Sturgis held and possessed the aforesaid premises claiming that they passed to her under the provisions of paragraph 6 of the will * * * and * * * she believed that her personal right in said premises was limited to her use and occupation of them during her lifetime only, and * * * on her death that the premises would pass to others. She * * * believed that the fee title to the premises would pass to her children, if she had any, but being a single woman all her life she anticipated that she would die childless, as she in fact did. She knew that title would pass to any of her brothers and sisters named in the will who survived her, but none did. She did not know that there was any change in the condition of her title ownership, if there in fact was any, upon the death of her said brothers and sisters, she surviving them."

" * * * [S]ince the death of the said Myra C. Sturgis her estate has continued to hold and possess the aforesaid premises down to this time, claiming it is possessed of fee simple ownership."

Nor can we ignore the crucial testamentary language that "all the real estate herein bequeathed to my five aforesaid mentioned children they are to have and to hold *during their natural lives"*. (Emphasis supplied.) We read this to mean that Myra only received a life estate. Her own life estate could not bootstrap itself into a greater estate than her father willed her. Thus, children, if any, and her brothers and sisters would have taken alternative estates or contingencies with a double aspect as they are sometimes called.[3] The estate of each was descendible, devisable and alienable, MCLA 554.35; MSA 26.35, but still subject to being defeated by occurrence of the stated contingency. MCLA 554.33; MSA 26.33.

Each of the remainders was mutually exclusive. Had Myra died with children they would have

---

[3] A remainder is statutorily defined. See MCLA 554.11; MSA 26.11; MCLA 554.13; MSA 26.13.

taken in fee simple absolute to the exclusion of her brothers and sisters. Her brothers and sisters would take only on occurrence of two contingencies. The first of these contingencies was that Myra die without children. She did. The second contingency was that any of her brothers and sisters mentioned herein survive her. None did. Thus, no estate vested in possession in her brothers and sisters. Consequently, no heirs, legatees, assigns or others in derivative status could take through them.[4] Therefore, the property in question reverts to the estate of the testator and in the absence of a residuary clause passes to the next of kin or heirs at law of the testator. *In re Coots' Estate,* 253 Mich 208, 216 (1931).

Affirmed in part and reversed in part.

Neither party having completely prevailed on appeal, no costs are awarded.

All concurred.

[4] MCLA 554.101; MSA 26.47, modifying the common-law rule on devolution of expectant estates, is inapplicable since the amendatory legislation became operative following the effective date of the will, *Stevens v Wildey,* 281 Mich 377, 380 (1937), and the contingency by which they would have been entitled to an estate in possession [survival of any of Myra's brothers and sisters following her death without issue] could not arise.